Filed 1/11/21  Wright v. Wright CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHARLES WRIGHT,<br><br>    Respondent,<br>v.<br><br>KIM WRIGHT,<br><br>    Appellant. | A160252<br><br>(Humboldt County<br>Super. Ct. No.<br>FL030183) |

Appellant Kim Wright (Appellant) appeals from the family court's April 3, 2020 order in this proceeding involving Appellant and her former husband, petitioner and respondent Charles Wright (Respondent).  The court's order declared void 2004 and 2005 awards of child support to Appellant on the ground that the court that entered the orders lacked jurisdiction to impose child support on Respondent, who was the minor's grandfather and guardian but not her parent.  Because the 2004 and 2005 orders were not subject to collateral attack, we reverse.

BACKGROUND

The order at issue on appeal is a post-judgment order in the parties' marital dissolution proceeding, initiated in March 2003.  In November 2002, in a separate proceeding, the parties had been appointed guardians of their

1

granddaughter Brook K. (the Minor).  The family court entered a judgment dissolving the marriage, and, in June 2004 and April 2005, the court entered orders directing Respondent to pay Appellant over $500 per month in child support.  The 2005 order stated, "THE COURT FURTHER ORDERS that since Petitioner Charles Wright is a guardian of the granddaughter, Brook, that she should be included in any child support calculations, and she is included in the calculations set forth above."  The 2004 order contained similar language.[1]

Previously, a December 2003 stipulation and order had confirmed that a house in Eureka was Respondent's separate property.  It also provided that Appellant would have the right to remain in the house until January 31, 2004, and, somewhat inconsistently, that Appellant would move out of the house after Respondent paid her $5,000 on or before January 10, 2004.  The December 2003 stipulation and order also required Respondent to make an additional $40,000 payment to Appellant.  It is undisputed the payments were not made and Appellant has remained in the house without paying rent to Respondent, although Appellant averred she paid for maintenance of the property.

In January 2019, Respondent filed a request for a determination he had satisfied the financial obligations in the December 2003 order by allowing Appellant to live in the Eureka house without paying rent; he also sought an order directing Appellant to move out of the residence.[2]  Appellant opposed

---

[1] Although the briefs on appeal make no reference to the circumstance, the parties' minor son was also living with Appellant.  The 2004 and 2005 child support awards were apparently based on Appellant's custody of both her son and the Minor because the "Support of Tax Calculation Report" attached to the 2004 order listed two children.

[2] Appellant averred she and Respondent had actually continued to share the home following the marital dissolution.

the request, and in February 2019 she requested an order enforcing the 2005 child support order, among other things. She averred she had never been paid the support provided for in the order.

In October and December 2019, Respondent requested an order vacating the child support orders and any accrued back support. Respondent argued the court that issued the orders lacked jurisdiction to direct him to pay support for the Minor, who was not his child.

On April 3, 2020, the family court entered the order challenged on appeal. The court found the June 2004 and April 2005 orders were void because they included child support awards for the Minor and there was no jurisdiction to make the awards, even though Respondent was one of his granddaughter's appointed guardians.

## DISCUSSION

The family court held the June 2004 and April 2005 orders were void because the court that issued the orders was without jurisdiction to direct Respondent to pay child support for the Minor based on his status as her guardian. On appeal, the parties dispute whether the court below was correct on that legal question, although Appellant points to no statute authorizing a court in a family law proceeding to make a support award for a minor who is not a child of the party required to pay support, including a legal guardian.[3] In any event, we need not resolve that question, because, as explained below, any such error in the 2004 and 2005 orders rendered the orders voidable, not void.

---

[3] At least one treatise supports Respondent's position, summarizing the rule as follows: "In a dissolution, legal separation or nullity action, the court's child support jurisdiction is limited to children born to or adopted by the parties together." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020) § 5:131.1.)

3

"The term 'jurisdiction,' 'used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition.' [Citation.] Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*).)

"However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which

4

prevented an earlier and more appropriate attack.' " (*American Contractors, supra*, 33 Cal.4th at p. 661.)

We conclude that, if the court that issued the 2004 and 2005 orders erred, it acted in excess of its jurisdiction and not without fundamental jurisdiction. Respondent does not dispute that the court at that time had jurisdiction over the parties or argue that the court lacked jurisdiction over the child support subject matter. (See *Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1100 [" 'Subject matter jurisdiction "relates to the inherent authority of the court involved to deal with the case or matter before it." [Citation.] Lack of jurisdiction in this "fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' "].) Instead, Respondent's contention is that the court in 2004 and 2005 lacked jurisdiction to provide the relief Appellant sought in her motion for support—an order that included support for Minor. But, if so, the court's order giving "relief" beyond which it was authorized to provide was only an act in excess of its jurisdiction. (*American Contractors, supra*, 33 Cal.4th at p. 661.) And Respondent identifies no " 'unusual circumstances' " that prevented a timely challenge to the orders. (*Ibid.*)

Although it preceded the California Supreme Court's decision, *In re Marriage of Hinman* (1992) 6 Cal.App.4th 711 (*Hinman*) applies in the family law context the principle subsequently articulated in *American Contractors*. In *Hinman*, the parties stipulated the couple would share joint physical and legal custody of five children, although the two oldest were fathered by the wife's former husband. (*Hinman*, at pp. 713–714.) Two months after entry of the final judgment, the wife moved to change the custody order, arguing the court lacked jurisdiction to award custody of the older children to the

5

husband.  (*Id.* at p. 714.)  The court of appeal held the family court had subject matter jurisdiction to enter the custody order.  (*Id.* at p. 718.)  The *Hinman* court observed, "A party who participates in or consents to a judgment which otherwise would be beyond the court's authority is precluded from attacking it collaterally, absent exceptional circumstances."  (*Hinman*, at p. 716.)  The court also observed, "As long as all parties affected are actually or constructively before the court, the jurisdictional facts determined by it cannot be attacked in a collateral proceeding."  (*Id.* at pp. 717–718.)  *Hinman* concluded, "while the [family] court's award of joint custody to [husband] may have been beyond its statutory authority, the court did not lack jurisdiction in the fundamental sense."  (*Id.* at p. 718.)

*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, relied upon by Respondent, is distinguishable.  There, the parties entered into a marital settlement agreement, incorporated into the family court's judgment, that provided for continuing visitation after one of their children, who was autistic, reached the age of majority.  (*Id.* at p. 591.)  The father sought to enforce visitation after the child turned 18, and the court of appeal held the visitation order was void.  (*Id.* at pp. 591, 598.)  The *Jensen* court noted that the family court lacked statutory authorization to make a custody order regarding an adult child; that the family court, lacking "in personam jurisdiction" over the adult child, could not order the child to visit the father; and that the family court could not order the mother to exercise control over the adult child.  (*Id.* at pp. 593–594.)  In contrast, the 2004 and 2005 orders in the present case did not purport to exercise control over a party not before the court.

Because the trial court erred as a matter of law in concluding the 2004 and 2005 orders were void, rather than voidable, we reverse.[4]

## DISPOSITION

The family court's order is reversed and the matter is remanded for further proceedings consistent with this decision.  Costs on appeal are awarded to Appellant.

---

[4] We deny Appellant's request for an award of attorney fees on appeal.  To the extent her complaint is that the family court did not award attorney fees below, she has not shown error.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A160252)

8